UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:13-cv-239-RJC

| | |
|---|---|
| DRELLCO LAMONT HUNTER, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| ) | |
| LAWRENCE PARSONS, Administrator of ) | |
| Lanesboro Correctional Institution, ) | |
| ) | |
| Respondent. ) | |

**THIS MATTER** comes before the Court on Respondent's Motion for Summary Judgment, (Doc. No. 8), on Petitioner's Motion to Amend/Correct Respondent in Petition for Writ of Habeas Corpus, (Doc. No. 11), and on Petitioner's Motion to Appoint Counsel, (Doc. No. 14).

The Court first notes that Petitioner's motion to amend/correct Respondent will be granted, and Lawrence Parsons has been substituted as the correct Respondent. Next, as to Petitioner's motion to appoint counsel, Petitioner states that he seeks appointment of counsel in this matter based on Petitioner's lack of competency and the lack of legal resources. In actions brought under 28 U.S.C. § 2254, appointment of counsel is governed by the Rules Governing § 2254 Proceedings, Rules 6(a) and 8(c), which mandate the appointment of counsel where discovery is necessary or if the matter proceeds to an evidentiary hearing. Id. Moreover, there is no constitutional right to the appointment of counsel in a § 2254 proceeding. Crowe v. United States, 175 F.2d 799 (4th Cir. 1949). The Court has the discretion to appoint counsel to financially eligible persons in a § 2254 action upon finding that "the interests of justice so

1

require." 18 U.S.C. § 3006A(a)(2)(B). After a review of the record, the Court concludes that Petitioner has not shown circumstances demonstrating the need for appointment of counsel in this case. Accordingly, Petitioner's motion for appointment of counsel will be denied.

## I. BACKGROUND

Petitioner is a prisoner of the State of North Carolina, who on December 8, 2005, in Mecklenburg County Superior Court, was convicted after a jury trial of second-degree murder and possession of a firearm by a felon. (Doc. No. 9-2 at 85-90; 92-96). The trial court sentenced Petitioner to a term of 251 to 311 months' imprisonment for the second-degree murder conviction and a term of 20 to 24 months' imprisonment for the possession conviction, with the sentences to run consecutively. (Id. at 92-96). Petitioner was represented at trial by Norman Butler. (Id.).

Petitioner appealed, and the North Carolina Court of Appeals found no error in a unanimous, unpublished decision filed on July 3, 2007. State v. Hunter, 184 N.C. App. 379, 646 S.E.2d 442 (2007). Petitioner was represented on appeal by James R. Parish. The North Carolina Court of Appeals summarized the facts underlying Petitioner's convictions as follows:

> On 23 May 2001 defendant searched for Jarvis McKinley Thompson (Thompson) because he believed that Thompson had broken into his home and stolen money from his girlfriend's purse. Between 3:30 p.m. and 4:30 p.m. the same day, defendant drove to the residence of Patricia McFadden Barnes (Barnes). He stopped his vehicle; left the driver side door open and the car in the middle of the street; and asked to speak to the "lady of the house." Barnes asked him to step inside of her home. Barnes knew defendant only as "Poo." In a loud voice, spitting as he talked, defendant told Barnes that "[Thompson] was going to get dealt with" because somebody broke into his house. Defendant also stated that if Barnes continued to have Thompson at her house, "someone there could get hurt."
>
> Later the same day, defendant picked up Chris Southern (Southern), Laron Branham (Branham) and another individual known as "Baby" in his Isuzu Rodeo vehicle and asked Southern to take him to Thompson's house. When they arrived

2

at Thompson's house, Southern went to the door and asked for Thompson. When
Thompson came to the door, Southern told him "Poo" wanted to "give him some
work," meaning to buy narcotics. Thompson went back into the house; returned
outside; and got in the car. The group drove to another section of Charlotte and
pulled behind "Lil Ron's" house. Everyone exited the vehicle except Thompson.
Southern observed defendant retrieve a gun from behind the back seat of the
Rodeo. Defendant and Thompson then left in the Rodeo. Defendant later returned
by himself, and told Southern he had "left him [Thompson] leaking," meaning he
had killed him.

Quentin Dozier testified that he was selling drugs on 21 May 2001[1] when
defendant pulled up with Thompson, Southern and "Baby." Defendant
approached Dozier and said he was "fixing to handle his business." The men
shook hands, and defendant left in the Rodeo. When defendant returned a couple
hours thereafter, he told Dozier he shot and killed Thompson. Dozier further
testified that defendant told him no one would find the body and that there was no
blood that linked him to the killing. Two days later, on 25 May 2001, the
Charlotte–Mecklenburg Police Department received an anonymous call regarding
a body located on railroad tracks. Detective Henson discovered a body, later
identified as Thompson, lying to the right of the railroad tracks in a weeded area.

On 26 May 2001, Dr. James Michael Sullivan (Sullivan), forensic
pathologist and medical examiner for Mecklenburg County, conducted an autopsy
on Thompson. Sullivan discovered three gunshot wounds to Thompson, one in
each wrist and one to his head. The shot to the head was the cause of death.
Sullivan estimated he had been dead for one to three days.

Henson determined that Carita Evans Gist's name appeared with
defendant's name on the title for the Rodeo. On 30 May 2001 between 10:00
p.m.–11:00 p.m., Henson put out an all points bulletin (APB) for the Rodeo. At
11:25 p.m. on the same evening, the vehicle was observed by an officer on a
public street; it was being driven by defendant. The vehicle was seized at that
time and towed to the police department. A later search of the vehicle revealed a
.38 revolver in a compartment behind the driver's seat; this revolver was the
firearm used in the killing of Thompson.

Id. at *1-2.

Before his trial, Petitioner filed a motion to suppress, contesting probable cause for

seizing and searching the Isuzu Rodeo where the gun was found. See (Doc. No. 9-2 at 14; Doc.

---

[1] This date of May 21, 2001, is given in the original North Carolina Court of Appeals opinion, and it appears to be an error. It appears from the other facts in the opinion that the correct date recited in the opinion should be May 23, 2001.

No. 9-12 at 96). At the suppression hearing, lead detective Harold Henson testified about his investigation and how he formed his beliefs that Petitioner may have committed a crime and that evidence might be in the Rodeo. See (Doc. No. 9-7 at 48-100; Doc. No. 9-8 at 1-51). Petitioner objected to his inability to face and cross-examine the witnesses upon whose information Henson formed his beliefs. See (Id.). Although Petitioner had received the names of the witnesses and copies of all the statements Henson relied on in forming his beliefs, Petitioner did not call any witnesses during the suppression hearing. See (Id.).

On October 23, 2007, Petitioner, through counsel Parish, filed a petition for writ of certiorari in the North Carolina Supreme Court, which denied the petition on August 26, 2008. State v. Hunter, 666 S.E.2d 767 (N.C. 2008). On February 12, 2009, Petitioner filed in Mecklenburg County Superior Court a pro se motion for appropriate relief ("MAR"). (Doc. No. 9-11 at 35-70). The Superior Court denied the MAR in an order filed on April 9, 2009. (Id. at 75).

On April 24, 2009, Petitioner filed a pro se petition for writ of certiorari in the North Carolina Court of Appeals, seeking review of the April 9, 2009, order denying his MAR. (Id. at 76-82). On May 12, 2009, the North Carolina Court of Appeals allowed the petition and remanded the matter to the Superior Court. State v. Hunter, No. COAP09-323 (N.C. Ct. App. May 12, 2009) (Doc. No. 9-11 at 83). The North Carolina Court of Appeals specifically noted that the April 9, 2009, order denying Petitioner's MAR was erroneous in concluding that Petitioner's claims of ineffective assistance of appellate counsel were procedurally barred. (Id.). The Court of Appeals remanded for the MAR Court to consider the merits of Petitioner's ineffective assistance of appellate counsel claims. (Id.).

On remand, the Mecklenburg County Superior Court instructed the State to file a

response to Petitioner's MAR, which it did, and on November 13, 2009, the Superior Court held a hearing based on Petitioner's MAR. (Doc. No. 9-11 at 84-100; Doc. No. 9-12 at 1-26). On January 11, 2010, the Superior Court again denied Petitioner's MAR, again finding Petitioner's ineffective assistance of appellate counsel claims procedurally barred. (Doc. No. 9-12 at 28-34). In the alternative, the MAR Court found the claims to be meritless. (Id.).

On June 28, 2010, Petitioner, through counsel Andrew DeSimone, filed a petition for writ of certiorari in the North Carolina Court of Appeals seeking review of the Superior Court's January 11, 2010, order denying his MAR. See (Id. at 38). On July 14, 2010, the North Carolina Court of Appeals vacated the Superior Court's January 11, 2010, order in part and remanded the matter for an evidentiary hearing on Petitioner's claim that his appellate counsel was ineffective for not raising on appeal the issue of whether the Confrontation Clause and Crawford v. Washington, 541 U.S. 36 (2004), apply to suppression hearings. (Id. at 38-39). On April 1, 2011, the MAR Court conducted an evidentiary hearing. (Id. at 40-93). On January 31, 2012, the MAR Court made findings of fact and conclusions of law and denied Petitioner's claim that his appellate counsel violated his Sixth Amendment right to the effective assistance of counsel. (Id. at 94-99).

On February 2, 2012, Petitioner filed a Notice of Appeal from the MAR Court's January 31, 2012, order denying his MAR. (Id. at 100). On February 22, 2012, appellate entries were made, and on March 26, 2012, Mr. DeSimone was appointed as counsel. (Id. at 105-07). In the interim, Petitioner filed a pro se petition for writ of certiorari in the North Carolina Court of Appeals on February 17, 2012, which the court of appeals dismissed on February 24, 2012. (Id. at 104). On July 9, 2012, Petitioner, through counsel Mr. DeSimone, filed a petition for writ of certiorari with the North Carolina Court of Appeals seeking review of the Superior Court's

5

January 31, 2012, order denying his MAR. See (Doc. No. 9-7). On July 26, 2012, the North Carolina Court of Appeals denied Petitioner's certiorari petition. (Doc. No. 9-14 at 2).

Petitioner filed a petition for writ of certiorari in the North Carolina Supreme Court seeking review of the North Carolina Court of Appeals' July 26, 2012, order denying his certiorari petition, and the North Carolina Supreme Court dismissed the petition on September 5, 2012. State v. Hunter, No. 518P07-2 (Sept. 5, 2012) (Doc. No. 9-15 at 2). Petitioner sought certiorari review from the United States Supreme Court on November 26, 2012, and the Supreme Court denied certiorari review on February 19, 2013. Hunter v. State, ___ U.S. ___, 133 S. Ct. 1271 (Feb. 19, 2013) (No. 12-7847) (Doc. No. 9-16 at 2).

Petitioner placed the § 2254 petition in the prison mailing system on March 19, 2013, and it was stamp-filed in this Court on April 18, 2013.[2] Petitioner raises the following grounds for relief in his § 2254 petition: (1) the Mecklenburg County Superior Court violated the North Carolina Court of Appeals' mandate ordering it to address the merits of Petitioner's ineffective assistance of counsel claims, when it instead concluded that the claim based upon appellate counsel's failure to raise a confrontation clause issue was procedurally barred; (2) the Superior Court erred in determining in the absence of any binding authority that the United States Supreme Court's decision in Crawford did not apply to suppression hearings; and (3) Petitioner's appellate counsel rendered ineffective assistance of counsel by failing to raise the issue of whether Crawford applies to suppression hearings on appeal. Respondent filed its summary judgment motion on August 5, 2013. On August 19, 2013, the Court issued an Order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of his obligation to

---

[2] In its Order to Answer, the Court instructed Respondent to address the timeliness of Petitioner's § 2254 petition. (Doc. No. 6 at 1). Respondent states that it has conceded for strategic reasons that Petitioner's § 2254 petition is timely.

respond to the summary judgment motion. On September 4, 2013, in response to the summary judgment motion, Petitioner filed numerous exhibits, which consist of records from the state court proceedings.

## II. STANDARD OF REVIEW

### A. Summary Judgment Standard

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. FED. CIV. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

### B. Section 2254 Standard

In addition to the motion for summary judgment standard set forth above, this Court must also consider the petition for writ of habeas corpus under the requirements set forth in 28 U.S.C. § 2254. Section 2254(d) provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Tice v. Johnson, 647 F.3d 87, 103 (4th Cir. 2011).

A state court decision is contrary to clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [an opposite result][.]" Williams v. Taylor, 529 U.S. 362, 405 (2000); Lewis v. Wheeler, 609 F.3d 291, 300 (4th Cir. 2010) (quoting Williams, 529 U.S. at 405). A state court unreasonably applies federal law when it "identifies the correct governing legal rule from th[e Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case." Williams, 529 U.S. at 407; Lewis, 609 F.3d at 300-01 (stating that a state court unreasonably applies federal law when it "extends a legal principle from [the Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply[ ]") (citation and quotation marks omitted).

"[A]n unreasonable application of federal law is different from an incorrect application of federal law" for § 2254(d)(1) purposes. Williams, 529 U.S. at 410. The former requires a "substantially higher threshold" to obtain relief than does the latter. Schiro v. Landrigan, 550 U.S. 465, 473 (2007). A state court's determination that a claim fails on its merits cannot be overturned by a federal habeas court "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

A habeas court, therefore, must "determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e Supreme] Court." Richter, 131 S. Ct. at 786. A petitioner has the burden of establishing that the state court decision "was so lacking in justification that there

8

was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87.

## III. DISCUSSION

### A. Petitioner's Ground One

First, as to Petitioner's Ground One, Petitioner is correct in asserting that on May 12, 2009, the North Carolina Court of Appeals allowed Petitioner's first certiorari petition and remanded the matter to the Superior Court, specifically directing the Superior Court to consider the merits of Petitioner's ineffective assistance of appellate counsel claims raised in his motion for appropriate relief. On remand, the MAR Court concluded in its April 9, 2009, order that Petitioner's ineffective assistance of counsel claim based on appellate counsel's failure to raise the Crawford suppression issue was procedurally barred. However, Petitioner then petitioned the North Carolina Court of Appeals again for certiorari review of the April 9, 2009, order finding the ineffective assistance of counsel claim to be procedurally barred. The North Carolina Court of Appeals again remanded the matter to the Superior Court directing it to address the merits of the ineffective assistance of counsel claim raised in his MAR. In a detailed order filed January 31, 2012, the Superior Court addressed and adjudicated Petitioner's ineffective assistance of counsel claim.

In sum, Petitioner's First Ground has been mooted by the fact that the state court has now addressed the ineffective assistance of counsel claim raised in Petitioner's MAR. Furthermore, and in any event, Ground One alleges an error in a state post-conviction proceeding. Errors in state post-conviction proceedings are not cognizable on federal habeas review. See Lawrence v. Branker, 517 F.3d 700, 717 (4th Cir.), cert. denied, 555 U.S. 868 (2008). For these reasons, Ground One is moot and will be dismissed.

B.      Petitioner's Grounds Two and Three

In Petitioner's Grounds Two and Three, Petitioner contends that appellate counsel was ineffective for not raising the Crawford suppression issues on appeal. As noted, Petitioner raised the substance of Grounds Two and Three in his MAR, and in its Order dated January 31, 2012, the MAR Court rejected Petitioner's claim after making detailed findings of fact and conclusions of law. See (Doc. No. 9-12 at 94-99). Specifically, the MAR Court found that counsel was not ineffective, observing that Crawford does not apply to suppression hearings. (Id. at 97-98). Specifically, the MAR Court concluded that counsel's decision not to raise the Crawford suppression issue on appeal was reasonable, and it did not affect the outcome of Petitioner's appeal. (Id.). The MAR Court also found that the evidence presented at the MAR evidentiary hearing showed that counsel thoroughly reviewed and researched Petitioner's case, considered raising the Crawford suppression issue, and decided against raising it, given the state of the law. (Id.).

The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. The Constitution's Sixth Amendment right to confrontation applies to the states through the Fourteenth Amendment. Pointer v. Texas, 380 U.S. 400, 406 (1965); see also U.S. CONST. amend. XIV. In Crawford v. Washington, the United States Supreme Court held that the Sixth Amendment "commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." 541 U.S. at 61. Thus, the Court in Crawford concluded that the Confrontation Clause excludes from criminal trials the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had

10

had a prior opportunity for cross-examination." Id. at 53-54.

Before Crawford, the Supreme Court had made clear in numerous cases that at a suppression hearing a court may rely on hearsay and other evidence even though that evidence would not be admissible at trial. See Alabama v. White, 496 U.S. 325 (1990); Illinois v. Gates, 462 U.S. 213 (1983); United States v. Raddatz, 447 U.S. 667 (1980); United States v. Matlock, 415 U.S. 164 (1974); Draper v. United States, 358 U.S. 307 (1959); Brinegar v. United States, 338 U.S. 160 (1949). Nothing in Crawford or subsequent cases suggests that the Supreme Court intended to alter its prior rulings allowing hearsay at pretrial proceedings such as suppression motions. In sum, there is simply no clearly established Supreme Court law holding that Crawford applies to suppression hearings. As Respondent notes, appellate counsel here was not required to raise a meritless claim on Petitioner's appeal. As such, the MAR Court's adjudication of Petitioner's ineffective assistance of counsel claim did not result in a decision that was contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. See 28 U.S.C. § 2254(d)(1). Nor was the order based on an unreasonable determination of facts, in light of the evidence presented in the state court proceedings. See 28 U.S.C. § 2254(d)(2). In sum, Petitioner's Grounds Two and Three are without merit.

## IV. CONCLUSION

For the reasons stated herein, Respondent is entitled to summary judgment.

**IT IS, THEREFORE, ORDERED** that:

1. Respondent's Motion for Summary Judgment, (Doc. No. 8), is **GRANTED** and the § 2254 petition is dismissed with prejudice.

2. Petitioner's Motion to Amend/Correct Respondent in Petition for Writ of Habeas

Corpus, (Doc. No. 11), is **GRANTED**.

3. Petitioner's Motion to Appoint Counsel, (Doc. No. 14), is **DENIED**.

4. It is further ordered that, pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller–El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: 1/24/2014

Robert J. Conrad, Jr.
United States District Judge